IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HERMAN OLDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 09-0192-WS-N |
| | ) |
| RETIREMENT PLAN OF | ) |
| INTERNATIONAL PAPER COMPANY, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 21). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 22-23, 25-26), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file,[1] the Court concludes that the motion is due to be denied.

**BACKGROUND**

The plaintiff was employed by International Paper Company ("IP") for many years in a heavy-duty capacity. He last worked in March 2006 and underwent a total knee replacement in April 2006. In December 2006, he applied for retirement disability benefits, but the defendant ("the Plan") denied them. The plaintiff appealed and was again denied. The single count of the complaint alleges that the Plan wrongfully denied the plaintiff's claim for disability and thereby violated ERISA. (Doc. 1).

The plaintiff's application left blank the line asking him to state the cause of his

---

[1] At the defendant's request, (Doc. 26 at 5-6), the Court has not considered the plaintiff's affidavit.

disability, but it did disclose that he had been awarded Social Security disability benefits. (Doc. 23, Exhibit C, Part II at Olds 168-72). The Plan received in December 2006 a copy of an agency letter to the plaintiff advising him of the award and his monthly benefit. (*Id*., Part I at Olds 70-71).

> The governing definition of "disability" is as follows:
>
> "**Disability**" or "**Disabled**" means a total disability which is a medically determinable physical or mental impairment or diagnosed terminal illness which renders the Participant incapable of performing any occupation or employment for which the Participant is qualified by education, training or experience and which is likely to be permanent during the remainder of the Participant's life, provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify, that the Participant is Disabled."

(Doc. 23, Exhibit B, Part II at Plan 160; *accord id.* Part I at Plan 7-8).

Along with his application, the plaintiff submitted documents from an independent medical examination by Dr. Romeo dated November 21, 2006. (Doc. 23, Exhibit C, Part I at Olds 64-69, 72-76).[2] The plaintiff's chief complaints were bilateral knee pain and swelling extending to the ankles and feet, and right shoulder pain provoked. He had no other subjective complaints. Medical history included a left total knee replacement, which other records reflect occurred in April 2006. Physical examination revealed trace effusion of the right knee, greater effusion of the left, both without synovitis, tenderness or laxity. Extremities showed no edema. A range of motion study found no limitations other than knee flexion (120 degrees in both knees rather than the normal 150 degrees). Dr. Romeo summarized his relevant findings as bilateral knee pain status post left total knee arthroplasty and with osteoarthritis on the right, along with morbid obesity.

As part of his examination, Dr. Romeo completed a functional assessment. He found that the plaintiff, in an eight-hour work day, could stand/walk 5-8 hours, sit 5-8

---

[2]The Plan describes Dr. Romeo as the plaintiff's treating physician, (Doc. 26 at 4), but his report identifies him as a certified independent medical examiner.

hours, lift 20 pounds frequently and 45 pounds occasionally, bend frequently, and stoop and climb occasionally.  Based on the Directory of Occupational Titles, Dr. Romeo categorized the plaintiff as Class II, meaning capable of medium manual activity.  Dr. Romeo found no mental impairment in any of a host of work-related tasks, and he concluded that the plaintiff has the qualification by reason of education, training or experience to perform the limited duties for which he is physically capable.

The Plan forwarded the information from Dr. Romeo for a transferable skill assessment ("TSA").  Based on his functional assessment, the TSA concluded the plaintiff could no longer perform his prior job, which was classified as heavy duty.  However, within the limitations identified by Dr. Romeo, the TSA identified two light-duty occupations for which the plaintiff is qualified by education, training or experience: router and order caller.  (Doc. 23, Exhibit C, Part II at Olds 148-49).

Based on the information from Dr. Romeo and the TSA, the Plan denied the plaintiff's claim.  (Doc. 23, Exhibit C, Part II at Olds 145-47).  The plaintiff appealed the denial, identifying the source of his disability as swelling in his legs caused by bad veins allowing blood to pool and causing unbearable pain.  This pain rendered it almost impossible for the plaintiff to stand or sit more than two hours at a time, and only by lying down and elevating his legs could he relieve the swelling and thus the pain.  The plaintiff in his appeal reminded the Plan that he had been approved for Social Security disability.  (*Id*., Part I at Olds 61-62).  The appeal included additional medical records and prompted a series of reviews.

Among the additional medical records was a functional capacity evaluation ("FCE") performed at the request of IP in July 2006.  (Doc. 23, Exhibit C, Part II at Olds 132-38).  The plaintiff ranked his pre-test bilateral knee pain at 6 and his post-test pain at 8-9, and he terminated walking, kneeling, stair climbing and crawling tests with complaint of pain in one or both knees.  Both knees could flex to approximately 130 degrees, with good stability.  The FCE indicated the plaintiff can kneel occasionally and

bend and crouch frequently. He had some lifting limitations, attributed to a right shoulder weakened by a motor vehicle accident some years previous and restricting him to a light to medium class of work.

The additional records also included progress notes and related papers from the files of Dr. Kirkland, the plaintiff's treating physician. (Doc. 23, Exhibit C, Part I at Olds 81-96; *id*. Part II at Olds 97-129). Those records reflect a diagnosis of "chronic venous stasis" as of April 2006, with further references to this condition in November 2006 and January 2007, the most recent record available. (*Id*. at Olds 119, 128-29).

The Plan sent its records to Dr. Chmell, an orthopedic surgeon, and requested him to perform an independent medical review ("IMR"). (Doc. 23, Exhibit C, Part I at Olds 45-48). Dr. Chmell concluded that the plaintiff is not disabled under the Plan definition. The Plan sent the same records to Dr. Gross for an internal medicine IMR and to Dr. Marion for a physical medicine and rehabilitation IMR. (*Id*. at Olds 37-44). Dr. Marion concluded that the plaintiff's residual knee discomfort, while clinically significant, would not have precluded him from performing the routine duties of a light duty job as of June 2006. (*Id*. at 39). Dr. Gross concluded that the plaintiff's diabetes, congestive heart failure, chest wall pain and epigastric pain would not impose any functional limitations. (*Id*. at 42-44).

The Plan denied the plaintiff's appeal in June 2007, (Doc. 23, Exhibit C, Part I at Olds 6-7), and this lawsuit followed.

## DISCUSSION

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.

1991).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (internal quotes omitted).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those exhibits, and those portions of exhibits, to which the parties have specifically cited. The Court's review is similarly limited to those arguments they have expressly advanced.

The parties agree that the Plan should prevail on motion for summary judgment if there is no genuine issue of material fact as to whether its decision to deny benefits was de novo correct or, at least, not arbitrary and capricious. (Doc. 25 at 7-8; Doc. 26 at 1-2). The plaintiff offers three reasons the Plan's decision was not correct but arbitrary and capricious: (1) it did not have before it evidence that the income the jobs of router and

---

[3]*E.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

order caller would command would be substantial and/or profitable; (2) the reviewers did not deal with the plaintiff's subjective complaints of continued pain; and (3) the reviewers did not consider any information from Social Security. (Doc. 25 at 11-12).

### A. Income or Profit.

The Plan does not disagree that it denied benefits without any evidence of the income or profit the plaintiff could earn from working as a router or order caller. Instead, it states that, because the applicable definition of disability is silent as to any such requirement, it was not required to consider what, if anything, the plaintiff could earn in such work. (Doc. 26 at 2-3). The Plan has not adequately supported its position.

In *Helms v. Monsanto Co.*, 728 F.2d 1416 (11th Cir. 1984), the Court stated that, "[t]o bar recovery, under the terms of the [disability income plan], the earnings possible must approach the dignity of a livelihood. [The plaintiff] is required to show physical inability to follow any occupation from which he could earn a reasonably substantial income rising to the dignity of an income or livelihood ...." *Id.* at 1421-22. The plaintiff relies on *Helms,* but the Plan says it is inapposite because the definition of disability there in play required a determination that the employee's disability prevented him "from engaging in any occupation or employment *for remuneration or profit*," 728 F.2d at 1418 (emphasis added), while the instant definition is silent about income. The trouble is that courts employing *Helms* have done so while ignoring language concerning remuneration or profit.

In *VanderKlok v. Provident Life & Accident Insurance Co*., 956 F.2d 610 (6th Cir. 1992), the plan defined disability as something preventing the employee "from engaging in every business or occupation and from performing any work for compensation and profit." *Id.* at 614. The Sixth Circuit ruled that *Helms* applied — not because the definition mentioned compensation and profit, but because "the phrase 'prevented from engaging in every business or occupation' cannot be construed so narrowly that an

individual must be utterly helpless to be considered disabled and that nominal employment, such as selling peanuts or pencils which would yield only a pittance, does not constitute a 'business or occupation.'" *Id*. at 614-15.

Likewise, in *Townsend v. Delta Family-Care Disability and Survivorship Plan*, 295 Fed. Appx. 971 (11th Cir. 2008), the definition excluded disability if the employee were capable of "engaging in any occupation whatsoever for compensation or profit, including part-time work." *Id*. at 976. The Eleventh Circuit ignored the clause "for compensation or profit," targeted the phrase "any occupation," and invoked *Helms* for the proposition that a plan "cannot define eligibility for benefits so narrowly that it 'would deny benefits [if the claimant] should engage in some minimal occupation, such as selling peanuts or pencils, which would yield only a pittance.'" *Id*. (quoting *Helms*, 728 F.2d at 1421)).

In *Hammond v. Fidelity and Guaranty Life Insurance Co.*, 965 F.2d 428 (7th Cir. 1992), the plan defined disability as the inability "to perform the chief job duties of his job or any job which [sic] he may be fitted by (1) training; (2) education; or (3) experience," with no reference to income, profit or remuneration. *Id*. at 428. The Court relied on *Helms* for the proposition that under this definition — substantively indistinguishable from the one at issue here — "the insured should be entitled to recover provided he or she is unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation." *Id*. at 431.

*VanderKlok*, *Townsend* and *Hammond* thus indicate that *Helms* is not limited to policies that expressly mention income, profit or remuneration but extends to any policy that would exclude disability even when the employee is unable to earn an income "rising to the dignity of an income or livelihood." The Plan has not shown this reading of *Helms* to be wrong,[4] and under it the Plan cannot prevail simply by declaring it need not consider

---

[4] It may be, as the Plan suggests in passing, that the Ninth Circuit does not impose an income requirement on a policy that defines disability in terms of other jobs for which

what, if any, income the plaintiff could earn in alternative employment.

**B.  Pain.**

The plaintiff asserts that the Plan did not deal with his subjective complaints of pain.  The Plan's only response is that, because Dr. Romeo mentioned pain and swelling as the plaintiff's chief complaint, and because the reviewers "considered" Dr. Romeo's records, the Plan adequately "evaluated" the plaintiff's pain.  (Doc. 26 at 3-4).  The Plan has failed to establish that it adequately considered the plaintiff's pain.

It is clear from the record that the plaintiff attributed his inability to work to pain; that this pain resulted from swelling of his legs, feet and ankles; that this swelling derived from a venous condition; and that the resultant pain precluded him from standing or sitting (requirements of most jobs) for more than two hours.  Dr. Romeo found the plaintiff capable of standing 5-8 hours a workday and sitting a comparable amount, but he focused on the plaintiff's knee issues rather than his lower leg pain secondary to swelling.  Perhaps the plaintiff did not adequately express to Dr. Romeo his problem, or perhaps Dr. Romeo did not detect any issue because the plaintiff did not during examination exhibit edema, but in any event it is far from clear that Dr. Romeo adequately addressed the primary cause of the plaintiff's alleged disability.

By the time of the plaintiff's appeal, any doubt as to his allegation had disappeared, since that document explicitly attributed his disability to unbearable pain caused by swelling in his legs due to a venous condition allowing blood to pool in his lower extremities, a condition exacerbated by standing or sitting.  The submitted records

---

the employee is qualified by training, education or experience.  *See  Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285-86 (9th Cir. 1990); *see also Pannebecker v. Liberty Life Assurance Co.*, 542 F.3d 1213, 1219-20 (9th Cir. 2008).  The question, however, is what the Eleventh Circuit requires, and the Plan has not distinguished, or even addressed, the cases cited in text.  Nor has it performed the hard work of demonstrating why the Eleventh Circuit would adopt the Ninth Circuit rule.

of his treating physician confirm that the plaintiff was subject to chronic venous stasis, a term that refers precisely to the condition the plaintiff described.

This history makes plain that the plaintiff's alleged pain incident to lower leg swelling was the key to his claim of disability.  The question, as posed by the Plan, becomes how it "evaluated" the allegation and evidence of pain and the swelling that precipitated it.  Dr. Chmell noted, in passing, Dr. Kirkland's ongoing treatment for lower extremity venostasis, but his discussion focused entirely on the plaintiff's knee issues, with no mention of the reality, extent or impact of the plaintiff's pain — understandable, since the lower leg swelling and resultant pain were not orthopedic conditions.  Dr. Marion noted references to swelling by Drs. Romeo and Kirkland, but he incorrectly characterized the medical records as addressing only knee swelling and so limited his discussion to the effect of knee swelling on walking, without any reference to the effect of lower leg swelling on standing or sitting, and without any reference to pain.

Dr. Gross, the internist, noted the plaintiff's diagnoses of diabetes and congestive heart failure and concluded that these conditions, among others he identified, would not impose any functional limitations.  The Court recognizes that diabetes and congestive heart failure can result in lower extremity swelling, but it is unable to conclude from Dr. Gross's brief statements that he considered the plaintiff's swelling and consequent pain, especially since he did not even acknowledge the existence of a diagnosis of chronic venous stasis and complaints of pain therefrom.

The Plan's four-sentence argument provides no authority for the proposition that the reviews described satisfy its legal obligations, and the Court will not attempt to supply the deficiency.

### C.  Social Security Award.

The Plan admits that it knew, in or before December 2006, that the plaintiff had been awarded disability benefits effective September 2006.  (Doc. 22 at 6; Doc. 23,

-9-

Exhibit C, Part I at Olds 70-71; Doc. 26 at 4). The plaintiff asserts that the reviewers did not consider this information. The Plan has failed to establish that it adequately considered the Social Security award.

The Plan argues that, because it forwarded a copy of the notice of award to the reviewers, they must have considered it. (Doc. 22, ¶¶ 17, 19 21; Doc. 26 at 4). However, the pages of their reports to which the Plan refers simply include a list of medical records, including "S.S.," which it "provided for review." The Plan has thus not established that the reviewers were even aware of the award, much less that they adequately considered its ramifications.

The Plan also suggests the notice of award is meaningless because it merely advises the plaintiff that he has been approved for disability benefits, without identifying the condition or conditions that resulted in the award or the rationale utilized in determining that the plaintiff is disabled. The problem is that the Plan has not attempted to show it has carte blanche to ignore a known Social Security disability award merely because the employee does not produce documents detailing the agency's analysis, and to do so without making any effort to obtain such documents either from the employee or the agency. Indeed, the Plan's own disability retirement application, which the plaintiff completed, requires submission only of the "notice of award," not of any supporting documents. (Doc. 23, Exhibit C, Part II at Olds 168). The plaintiff supplied that notice and thereby satisfied the Plan's only demand.

## CONCLUSION

The plaintiff has identified three reasons the Plan's denial of his claim was not correct but arbitrary and capricious. The Plan has identified minimal grounds for challenging the plaintiff's assertion, and none of them is supported by either careful analysis of the record or resort to adequate judicial authority. The Court neither has nor expresses any opinion as to the ultimate validity of the plaintiff's claim. On the limited

argument and authority provided, the Plan's motion for summary judgment is **denied**.

DONE and ORDERED this 30th day of March, 2010.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE