# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **HERMAN OLDS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0192-WS-N |
| ) | |
| **RETIREMENT PLAN OF** ) | |
| **INTERNATIONAL PAPER COMPANY,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

This ERISA matter is before the Court for final resolution. The parties initially requested a bench trial. (Doc. 16 at 2; Doc. 33 at 10-11). However, the Court granted the defendant's motion in limine to limit the evidence to the administrative record, obviating a hearing. (Doc. 38). The Court ordered briefing on the merits, which the parties have supplied, (Docs. 40-42), and the administrative record has been submitted. (Doc. 39).

## BACKGROUND[1]

The plaintiff was employed by International Paper Company ("IP") for many years in a heavy-duty capacity. He last worked in March 2006 and underwent a total knee replacement in April 2006. In December 2006, the plaintiff applied for retirement disability benefits, but the defendant ("the Plan"), through its administrator, denied them. As an IP employee, the plaintiff was a participant in the Plan and was eligible to apply for benefits pursuant to the Plan. The governing definition of "disability" is as follows:

---

[1] Many of these facts are stipulated by the parties. (Doc. 33 at 5-10).

> "**Disability**" or "**Disabled**" means a total disability which is a medically determinable physical or mental impairment or diagnosed terminal illness which renders the Participant incapable of performing any occupation or employment for which the Participant is qualified by education, training or experience and which is likely to be permanent during the remainder of the Participant's life, provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify, that the Participant is Disabled.

The plaintiff's application left blank the line asking him to state the cause of his disability. (Doc. 39, Exhibit C at Olds 168).[2] However, along with his application, the plaintiff submitted documents from an independent medical examination by Dr. Romeo dated November 21, 2006. (*Id*. at 64-69). The plaintiff's chief complaints were bilateral knee pain and swelling extending to the ankles and feet, also right shoulder pain provoked. (*Id*. at 64). Medical history included a left total knee replacement, which other records reflect occurred in April 2006. After conducting a physical examination and range of motion study, Dr. Romeo summarized his relevant findings as bilateral knee pain status post left total knee arthroplasty and with osteoarthritis on the right, along with morbid obesity. (*Id*. at 67). Dr. Romeo also completed a functional assessment roughly consistent with medium manual activity. (*Id*. at 72-76).

The Plan forwarded the information from Dr. Romeo for a transferable skill assessment ("TSA"). Based on his functional assessment, the TSA concluded the plaintiff could no longer perform his prior job, which was classified as heavy duty. However, within the limitations identified by Dr. Romeo, the TSA identified two light-duty occupations for which the plaintiff is qualified by education, training or experience: router and order caller. (Exhibit C at 148-49). Based on the information from Dr. Romeo and the TSA, the Plan denied the plaintiff's claim in April 2007. (*Id*. at 145-47).

---

[2] This and all subsequent citations to the record in this order are to the Bates-stamped number in Exhibit C.

The plaintiff timely perfected an administrative appeal. In his appeal letter, the plaintiff reported as follows:

> I went out of work March 15, 2006 because of the condition of the veins in both of my legs. I have bad veins and as a result the flood [sic] goes down my legs and can't go back up. This causes bad swelling in my legs. When this happens it is almost impossible for me to stand or sit for more than two hours at a time. I can't drive or ride in my car for extended periods of time. All I can do to get the swelling down and ease the pain is to take my prescription medications and lie down with my legs elevated and wait for the swelling to go down. … I am just not able to continue to work with my legs in the condition they are in. The pain in my legs is unbearable[.] I wish they could find out exactly what is wrong and fix them. The surgery on my left knee did not stop the swelling like we thought it would. The pain is very bad at times.

(Exhibit C at 61).

The plaintiff submitted with his appeal letter additional medical records, which included progress notes and related papers from the files of Dr. Kirkland, the plaintiff's treating physician. Those records reflect a notation of "venous stasis/prolonged sitting" as early as June 2003, a diagnosis of "chronic venous stasis" in January 2004 and again in May 2004 and April 2006, and further references to this condition throughout this period and extending to January 2007 (the most recent record available). (Exhibit C at 93-129).

Also included with the appeal was a functional capacity evaluation ("FCE") performed at the request of IP in July 2006. The plaintiff ranked his pre-test bilateral knee pain at 6 and his post-test pain at 8-9, and he terminated walking, kneeling, stair climbing and crawling tests with complaint of pain in one or both knees. Both knees could flex to approximately 130 degrees, with good stability. The FCE indicated the plaintiff can kneel occasionally and bend and crouch frequently. He had some lifting limitations, attributed to a right shoulder weakened by a motor vehicle accident some years previous and restricting him to a light to medium class of work. (Exhibit C at 132-38).

The Plan sent its records to Dr. Chmell, an orthopedic surgeon, and requested him to perform an independent medical review ("IMR"). Dr. Chmell reviewed, inter alia, the

FCE, Dr. Romeo's functional assessment, progress notes from Dr. Kirkland, lab reports, x-rays, CT scans and MRI reports, and the plaintiff's Social Security award. Dr. Chmell did not examine the plaintiff. Dr. Chmell concluded that the plaintiff is not disabled under the Plan definition because, although he has arthritis in his right knee and has had a total left knee replacement, he has excellent knee range of motion without neurovascular or strength deficit and can perform medium level work. (Exhibit C at 45-48).

The Plan sent the same records to Dr. Gross for an internal medicine IMR. Like Dr. Chmell, Dr. Gross reviewed records but did not examine the plaintiff. Dr. Gross concluded that, from an internal medicine perspective, the plaintiff should not have any functional limitations. (Exhibit C at 41-44).

The Plan also sent the records to Dr. Marion, who is board-certified in physical medicine and rehabilitation and pain management, for an IMR. Dr. Marion likewise reviewed records but did not examine the plaintiff. Dr. Marion concluded that the plaintiff's post-operative residual knee discomfort, while clinically significant, would not have precluded him from performing the routine duties of a light duty job as of June 2006. (Exhibit C at 37-40).

The Plan denied the plaintiff's appeal in June 2007. (Exhibit C at 6-7). This lawsuit followed.

## DISCUSSION

The plaintiff's primary argument is that the defendant "wrongfully did not consider Plaintiff's chief complaint of injury when assessing whether he was entitled to disability benefits[,] making the denial arbitrary and capricious." (Doc. 40 at 3). The plaintiff's chief complaint, as is obvious from his appeal letter, was that pooling fluid in his lower extremities caused such great pain that he could not stand or sit for extended

periods. The Plan does not deny that the plaintiff asserted this complaint in his appeal letter,[3] but it does advance several arguments to counter the plaintiff's position.

First, the Plan asserts that the plaintiff has never before in this litigation advanced an argument that the Plan improperly did not consider this complaint. Although the Plan points to the plaintiff's response to its motion for summary judgment, (Doc. 41 at 30), it is not clear how failure to raise an argument in opposition to summary judgment could preclude a litigant from raising it at trial. In any event, the plaintiff did complain in his opposition brief that "[t]here is absolutely no reference by any of the attending [sic] physicians reviewing Plaintiff's appeal that dealt with plaintiff's subjective complaints of continued pain." (Doc. 25 at 12 n.1). The Plan itself acknowledged the argument and expressly countered it in its reply brief. (Doc. 26 at 2-4). The Plan also notes that the triable issues portion of the parties' joint pretrial document does not mention any failure to consider the plaintiff's pain. (Doc. 41 at 30). The parties' jointly agreed triable issue, however, is whether the plaintiff is entitled to benefits, (Doc. 33 at 2), an issue broad enough to encompass objections to the Plan's consideration vel non of the plaintiff's fluid-retention-induced pain.[4]

Second, the Plan argues that the plaintiff's appeal letter contradicts pre-appeal statements he made to Dr. Romeo and others. (Doc. 41 at 30-31). But the plaintiff explicitly complained to Dr. Romeo of "swelling extending to the ankles and feet," (Exhibit C at 164), which is perfectly consistent with the complaint raised in his appeal letter. The plaintiff presented with bilateral knee pain at his FCE and complained of knee pain during the FCE, (*id*. at 133, 135), but this is not inconsistent with difficulties due to

---

[3] The Plan suggests the plaintiff "change[d] his alleged disabling condition … in his briefing to the court," (Doc. 41 at 31), but this is plainly wrong, as the quoted material from his appeal letter makes clear beyond cavil.

[4] The Plan suggests the plaintiff "abandoned" his pain argument by not addressing it in his principal brief. (Doc. 41 at 16 n.3). The assertion is inexplicable, as the plaintiff devoted the majority of his brief to precisely this argument. (Doc. 40 at 3-12).

on fluid-retention-based swelling and pain below the knees, especially since the FCE was designed to test the plaintiff's ability to lift, kneel, bend, crouch, reach, etc., not to test his ability to stand or sit for extended periods. There is no contradiction.

In a related vein, the Plan argues that these pre-appeal statements reflect the true "reasons [the plaintiff] left work and these were the reasons he allegedly was disabled." The Plan complains that the plaintiff "cannot subsequently change his alleged disabling condition." (Doc. 41 at 3). The Plan apparently intends to argue that the only relevant potentially disabling conditions are those asserted by the plaintiff in his application or reflected in his submitted medical records and that these cannot be expanded on administrative appeal. The Plan offers no authority or reasoning to support its ipse dixit, but it fails on its own terms. As noted, the plaintiff did in fact complain to Dr. Romeo of swelling extending to his ankles and feet, so the disabling condition articulated in his appeal letter was also made on initial review; there has been no post-denial expansion of grounds.

Third, the Plan argues it was free to reject the plaintiff's asserted disabling condition without consideration because the plaintiff submitted no medical opinion that the condition was disabling. (Doc. 41 at 31-32).[5] The Plan was statutorily bound to provide the plaintiff a "full and fair review" on appeal, 29 U.S.C. § 1133(2), and the Plan cites no authority for the proposition that this provision places on the plaintiff the burden of submitting a medical opinion that disability exists before the Plan's duty of review is triggered. The single authority cited by the Plan indicates only that a plaintiff who is in possession of existing medical evidence but who elects not to submit it cannot thereafter complain that the defendant violated Section 1133(2) by not asking for it. *Kearney v. Standard Insurance Co.*, 175 F.3d 1084, 1091 (9th Cir. 1999). Nothing in *Kearney* allows

---

[5] The Plan does not deny that the condition exists. Dr. Kirkland's records, which the plaintiff submitted on appeal, are choked with references to the plaintiff's chronic venous stasis and resulting pedal edema. "Venous stasis is the stopping of the blood flow in a vein." *Monroe v. Shalala*, 1995 WL 313965 at *3 n.6 (5th Cir. 1995).

the Plan to reject out of hand any appeal that does not come packaged with a medical opinion confirming disability.

Finally, the Plan insists that its medical reviewers fully considered and appropriately rejected the plaintiff's assertion of disability due to fluid-retention-based swelling and pain. (Doc. 41 at 32-34). Notably, the Plan identifies no evidence that it informed Drs. Chmell, Gross or Marion that the plaintiff based his claim of disability on this condition. This is unsurprising, since the Plan itself clearly did not recognize this claimed condition as the basis of the disability claim, as its description of the appeal letter includes only the plaintiff's statement that he cannot stand or sit for more than two hours, with no mention of the underlying condition to which the plaintiff attributed this inability and his consequent disability. (Exhibit C at 22).

It is also clear that the Plan requested only very limited reviews. Dr. Gross specified that he had "been asked to review this from an internal medicine perspective." (Exhibit C at 41). The Plan's records confirm that the "[r]eview requested" was "Orthopedics[;] PM&R[; and] Internal Medicine." (*Id*. at 19). The Court finds that the Plan did not request the reviewers to consider disability based on fluid-retention-based swelling and pain and did not inform the reviewers that this was the basis of the plaintiff's disability claim.

The Plan is thus left to argue that, even though the reviewers had no idea that the plaintiff grounded his disability claim on fluid-retention-based swelling and pain, and even though they were not asked to consider such a claim, they nevertheless actively considered and defensibly rejected disability on that basis and effectively communicated such rejection to the Plan. The suggestion is untenable on this record.

The Plan stresses that Dr. Chmell "noted that Mr. Olds had been treated for venostasis." (Doc. 41 at 32). This description of Dr. Kirkland's November 14, 2006 office notes was made by Dr. Chmell only to accentuate what he found significant about the notes for that date: the absence of any discussion of the plaintiff's knees, which he understood to be the condition he had been asked to assess. (Exhibit C at 45). Dr.

Chmell nowhere discussed the extent or consequences of the plaintiff's venous stasis; he did not even note that the condition is "chronic." None of this is surprising since, as noted above, Dr. Chmell was asked to perform only an orthopedic review, and such a review would not have concerned itself with a venous condition. The Court finds that Dr. Chmell did not consider whether the plaintiff might be disabled by fluid-retention-based swelling and pain, did not reach any conclusion in that regard, and did not suggest to the Plan that he had done so.

The Plan affirmatively admits that Dr. Marion considered only knee pain and swelling. (Doc. 41 at 33). Dr. Marion's report repeatedly mentions the plaintiff's knees but is utterly silent as to swelling and pain below the knees, even though Dr. Marion was retained as a pain specialist. Nor does his report mention the plaintiff's condition of venous stasis – of which he presumably was ignorant, since he admitted he found Dr. Kirkland's handwritten notes to be "poorly legible." (Exhibit C at 37).[6] The Court finds that Dr. Marion did not consider whether the plaintiff might be disabled by fluid-retention-based swelling and pain, did not reach any conclusion in that regard, and did not suggest to the Plan that he had done so.

The Plan argues that Dr. Gross must have considered the plaintiff's pain, because he noted in his report that the plaintiff's medical records included complaints of knee pain, chest wall pain, and epigastric pain. (Doc. 41 at 33). But the question is lower leg pain incident to fluid retention and swelling, and as to that Dr. Gross' report is completely silent. The Court finds that Dr. Gross did not consider whether the plaintiff might be disabled by fluid-retention-based swelling and pain, did not reach any conclusion in that regard, and did not suggest to the Plan that he had done so.

As noted, ERISA requires that the Plan, "[i]n accordance with regulations of the Secretary, … afford a reasonable opportunity to any participant whose claim for benefits

---

[6] The notes are in fact perfectly legible, at least as to the plaintiff's chronic venous stasis.

[8]

has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2); *accord Glazer v. Reliance Standard Life Insurance Co.*, 524 F.3d 1241, 1245 (11th Cir. 2008). The plaintiff asserts that the Plan violated this provision. (Doc. 40 at 8; Doc. 42 at 3, 5-6).

Among the relevant regulations under Section 1133(2) is the following: "Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures … [p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv). This provision is applicable to plans providing disability benefits. *Id*. § 2560.503-1(h)(4); *accord Glazer*, 524 F.3d at 1245.

The plaintiff's appeal letter constituted comments clarifying a ground of disability reflected in Dr. Romeo's originally submitted records but ignored by the Plan in its initial review, and the records of Dr. Kirkland submitted with the appeal confirmed the existence of this condition. As discussed above, however, the Plan in denying the appeal and upholding the denial of benefits did not take into account these comments and records. It therefore violated Section 1133(2).

"Normally, where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance, the proper course of action for the court is remand to the plan administrator for a 'full and fair review.'" *Weaver v. Phoenix Home Life Mutual Insurance Co.*, 990 F.2d 154, 159 (4th Cir. 1993).[7] "The only exception to that [remand]

---

[7] *Accord Brown v. J.B. Hunt Transport Services, Inc.*, 586 F.3d 1079, 1087 (8th Cir. 2009); *Krauss v. Oxford Health Care Plans, Inc.*, 517 F.3d 614, 630 (2nd Cir. 2008). The Eleventh Circuit follows a similar rule. *See Counts v. American General Life & Accident Insurance Co.*, 111 F.3d 105, 108 (11th Cir. 1997) (when a benefits termination letter does not
(Continued)

rule would be where the record establishes that the plan administrator's denial of the claim was an abuse of discretion as a matter of law." *Gagliano v. Reliance Standard Life Insurance Co.*, 547 F.3d 230, 240 (4th Cir. 2008); *accord Caldwell v. Life Insurance Co. of North America*, 287 F.3d 1276, 1289 (10th Cir. 2002) ("A remand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious [citing *Weaver*] or the case is so clear cut that it would be unreasonable for the plan administrator to deny benefits on any ground.") (internal quotes omitted).

The plaintiff asserts that the denial of benefits was arbitrary and capricious, thereby obviating remand, but the Court disagrees. The plaintiff himself insists that a decision is arbitrary and capricious only if there was no "reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." (Doc. 40 at 10). The only record facts concerning the plaintiff's alleged disability are that Dr. Kirkland followed him for chronic venous stasis, that the plaintiff complained to Dr. Romeo of swelling in his feet and legs, and that the plaintiff told the Plan this swelling was so painful as to prevent him from standing or sitting more than two hours at a time. With nothing more to go on than that the plaintiff has a condition which can vary widely in degree but which he personally believes disables him, an administrator could reasonably conclude that the plaintiff's venous stasis did not disable him at the relevant time. The denial of benefits thus cannot be said to be arbitrary and capricious for purposes of avoiding remand under Section 1133(2).

---

comply with Section 1133(1) and its implementing regulations, "the usual remedy is not excusal from the exhaustion requirement, but remand to the plan administrator for an out-of-time administrative appeal"); *cf. Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) (where the plan administrator "failed to consider all of the relevant evidence available," the trial court did not err "in remanding for the Plan administrator to make a reasonably relevant inquiry").

The plaintiff's secondary – and only remaining – argument is that the Plan wrongfully failed to determine if the plaintiff, despite the limitations found by Dr. Romeo, the FCE and the reviewing physicians, could work in an occupation paying enough to be considered gainful or lucrative employment. (Doc. 40 at 12).

In *Helms v. Monsanto Co.*, 728 F.2d 1416 (11th Cir. 1984), the Court stated that, "[t]o bar recovery, under the terms of the [disability income plan], the earnings possible must approach the dignity of a livelihood. [The plaintiff] is required to show physical inability to follow any occupation from which he could earn a reasonably substantial income rising to the dignity of an income or livelihood ...." *Id*. at 1421-22. When *Helms* applies, the residual ability to engage in "some minimal occupation, such as selling pencils or peanuts, which would yield only a pittance," will not bar recovery of benefits. *Id*. at 1421. The plaintiff relies on *Helms*. (Doc. 40 at 12-14).

As noted, the Plan obtained a TSA, which concluded the plaintiff could perform the jobs of router and order caller. The plaintiff argues that, because the Plan did not request or receive specific "wage information" as to these positions, the Plan failed to ensure that the positions would generate income sufficient to achieve the dignity of a livelihood and that the Plan's denial of benefits was thus arbitrary and capricious. (Doc. 40 at 15-16).

The Plan denies that *Helms* applies to disability definitions such as the one at issue here, (Doc. 41 at 18-24), but the Court need not decide that question. Even if *Helms* does apply, the Plan's denial of benefits was not arbitrary and capricious based on income considerations. The TSA reflects that the jobs of router and order caller are found in the Dictionary of Occupational Titles ("DOT"). (Exhibit C at 149). The Court agrees with the Plan that jobs listed in the DOT at least presumptively pay more than a pittance and

enough to rise to the dignity of a livelihood, satisfying *Helms*. (Doc. 41 at 21, 23, 24). The plaintiff has not attempted to rebut the presumption.[8]

For the reasons set forth above, the plaintiff is not entitled to an award of benefits by this Court or to a remand directing the Plan to award benefits. The plaintiff is, however, entitled to a remand in order for the Plan to conduct a full and fair review. Judgment shall be entered accordingly by separate order.[9]

The plaintiff seeks an award of attorney's fees. (Doc. 33 at 13; Doc. 40 at 17). Any such request must be presented to the Court in the manner and within the time established by the Federal Rules of Civil Procedure and corresponding local rules.

DONE and ORDERED this 25th day of February, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] The Court notes its inability to find in the DOT any entry for pencil seller or peanut purveyor.

[9] The parties have not raised, and the Court does not address, what if any additional evidence the plaintiff may submit to the Plan on remand or what if any investigation the Plan must undertake before resolving the question of the plaintiff's disability due to fluid-retention-based swelling and pain.